# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

**FILED**

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
*By dreese at 10:50 am, Dec 18, 2014*

|  |  |  |
|---|---|---|
| In the matter of: | ) | |
| | ) | |
| JAMES L. TAYLOR, SR. and | ) | Chapter 13 Case |
| GAIL TAYLOR, | ) | |
| | ) | |
| *Debtors.* | ) | Number <u>10-60012-EJC</u> |
| | ) | |

## OPINION AND ORDER ON TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTIONS

This case is before the Court on the Motion to Retain Life Insurance Proceeds—Amended (dckt. 152) filed by Gail Taylor ("Debtor") and Trustee's Objection to Claim of Exemptions (dckt. 155) filed by O. Byron Meredith III, the Chapter 13 trustee ("Trustee"). Debtor seeks to retain life insurance proceeds that she received due to her husband/joint debtor's death. In turn, Trustee objects to Debtor's exemption of the death benefits, except to the extent that she can show they are reasonably necessary for her support within the meaning of O.C.G.A. § 44-13-100(a)(11)(C). The Court held hearings on these matters on July 1, 2014 and September 17, 2014. As explained more fully below, Debtor is entitled to exempt and may retain $79,942.86 of the life insurance proceeds, but $18,557.14 of those proceeds are property of the estate and available to satisfy the claims of unsecured creditors.

**℞AO 72A**
**(Rev. 8/82)**

I.      JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B) (providing that core proceedings include "allowance or disallowance of claims against the estate or exemptions from property of the estate"). In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law.

II.     FINDINGS OF FACT[1]

A.      Procedural History

Debtor and her late husband, James Taylor Sr., filed a Chapter 7 case on January 6, 2010. That case was converted to Chapter 13 on March 2, 2010.

The debtors filed an amended Schedule I on March 2, 2010, which stated that Mr. Taylor received gross commission income of $6,000.00 per month and Social Security income of $1,900.00 per month. Their amended Schedule I also stated that Debtor received Social Security income of $746.00 per month. (Dckt. 38.) Their Chapter 13 plan was confirmed on May 17, 2010 with monthly payments of $650.00. (Dckt. 102.) Under that plan, creditors would receive a total of $5,000.00. (Dckt. 103.) In December

---

[1] The following facts were either stipulated to, found at the September 17, 2014 hearing, or are the proper subject of judicial notice.

2011, the debtors filed a modification after confirmation seeking to reduce their Chapter 13 plan payments to the current amount of $400.00 based on the assertion that "Debtor's income from residual insurance commissions has dropped and continues to decline." (Dckt. 118, at 2.)  The Court approved the modification on January 25, 2012.  (Dckt. 122.) According to Trustee, the current dividend to unsecured creditors is 2.29%.

Mr. Taylor died on May 5, 2012.  As a result of his death, Debtor received death benefits of $55,592.11 under a life insurance policy issued by Met Life and another $50,253.50 under a life insurance policy issued by American General.  Debtor failed to amend her schedules or otherwise disclose the receipt of these death benefits for over a year.

The fact that she received these funds was not discovered until Debtor filed another modification after confirmation on November 26, 2013 (dckt. 140) seeking to reduce her Chapter 13 payments to $200.00 per month, purportedly due to a decline in Mr. Taylor's residual insurance commissions.  After Trustee filed an objection to the modification on December 16, 2013 seeking information about, *inter alia*, "the status of any life insurance policies, or proceeds of those policies" (dckt. 141), Debtor withdrew the modification on January 21, 2014.  (Dckt. 141.)  Finally, in April 2014, Debtor amended her Schedule B to disclose that she received $90,000.00 in life insurance proceeds, and she also amended her Schedule C to claim an exemption in that same amount.  (Dckt. 148.)  Obviously, she failed to disclose and exempt the full amount of the

death benefits, which totaled $105,845.61 based on the two policies described above.

**B.      Debtor's Motion and Trustee's Objection**

On April 11, 2014, Debtor filed the motion to retain insurance proceeds currently under the Court's consideration.  On April 30, 2014, Trustee filed a timely objection to Debtor's amended claim of exemptions, which is also under the Court's consideration.  (Dckt. 155.)  On July 1, 2014, the Court held a hearing on these matters, which was continued to allow the parties to prepare for an evidentiary hearing on whether the insurance proceeds were necessary for Debtor's support within the meaning of Georgia's exemption statute.  The parties filed a joint stipulation of facts for purposes of these matters on September 15, 2014 (dckt. 168), and the Court held a continued evidentiary hearing on September 17, 2014.  At the conclusion of the hearing, the Court took the matters under advisement.[2]

**C.      Debtor's Financial Situation**

Debtor is sixty-eight years old and has not been employed in many years. (Dckt. 171, at 19.)  She testified that she has three sons but cannot rely on them for support because all three of them have filed bankruptcy "in recent years."  (Dckt. 171, at 23–24.)

---

[2] The docket reflects that Trustee filed a modification (dckt. 177) on December 4, 2014 to distribute these additional funds, but that modification is not yet before the Court.

The payoff figure for Debtor's first mortgage is $248,904.00, and the payoff figure for her second mortgage is only $4,370.22. (Dckt. 171, at 18, 32.) Her combined monthly payment for both mortgages is about $2,400.00, with $1,983.11 of that sum attributable to her first mortgage. (Dckt. 171, at 31.)

Exhibits were tendered into evidence showing that the debtors owed $16,618.00 for 2012 federal income taxes and $2,359.00 for 2012 state income taxes. (Joint Ex. 6–7.) Debtor's 2013 federal income tax return was also admitted and shows that she owed $8,962.00. (Joint Ex. 7.) Debtor testified that she mailed checks to pay those tax obligations about four months before the September 17 hearing out of one of the life insurance "accounts;" however, none of the several documents presented to the Court showed that these payments were actually made.[3] (Dckt. 171, at 38; Joint Exs. 8–11.)

Debtor now receives $2,208.00 in Social Security survivors benefits. Her only other significant source of income is residual insurance commissions. From 1994 to 2004, Mr. Taylor sold insurance policies that continue to generate commissions.[4] These residual insurance commissions are earned when a policy holder continues making

---

[3] After the hearing, Debtor filed a document titled "Supplemental Exhibit to Debtor's Motion to Retain Life Insurance Proceeds." (Dckt. 174.) It appears to contain monthly statements from the "life insurance proceeds holding accounts;" however, there do not appear to be any entries in these statements that could plausibly represent the payment of Debtor's tax obligations from these accounts.

[4] Debtor testified that Mr. Taylor last wrote new business in 2002 or 2004. (Dckt. 171, at 57.)

AO 72A
(Rev. 8/82)

monthly payments under a policy that Mr. Taylor sold. Since Mr. Taylor's death, Debtor has received a monthly check based on these commissions. Over time, as fewer of Mr. Taylor's former customers have chosen to renew their policies, the amount of commission income received by Debtor has declined.

Debtor filed her most recently amended Schedules I and J on November 26, 2013, reflecting that the commission income is $3,700.00 and Debtor's Social Security income is $746.00, resulting in total average monthly income of $4,446.00. (Dckt. 139.) The debtors' 2012 tax return shows that the commission income for that year totaled $63,148.00, which is an average of $5,262.33 per month. Debtor's 2013 tax return shows that the commission income for that year totaled $51,925.00, which is an average of $4,327.09 per month. Debtor received commission income of $4,295.00 for December 2013, $4,374.00 for January 2014, $3,743.00 for February 2014, $4,222.00 for March 2014, and $3,732.00 for April 2014. (Joint Ex. 12.)

The testimony revealed a few additional facts relevant to Debtor's financial situation. The last payment required under her confirmed Chapter 13 plan will occur in early 2015. (Dckt. 171, at 40.) She owns a 2004 van that she does not intend to replace in the near future. (Dckt. 171, at 41.) Finally, Debtor has no dependents.

(Rev. 8/82)

6

D.    The Remaining Insurance Proceeds

About $98,500.00 of the insurance proceeds remained at the time of the September 17 hearing. The parties decided to "work from" the $98,500.00 figure because a portion of the death benefits was used to bury Mr. Taylor. (Dckt. 171, at 7); *see also In re Bright*, No. 05-14093-WHD, 2007 WL 7141820, at *3 (Bankr. N.D. Ga. July 16, 2007) (noting that trustee did not oppose the exemption of funds used to cover funeral expenses of debtor's husband).

III.    DISCUSSION

First, the Court must determine whether the life insurance proceeds are property of the estate, which the Court decides in the affirmative. As a result, the Court must determine the extent to which Debtor may exempt the insurance proceeds under O.C.G.A. § 44-13-100(a)(11)(C).

A.    The Life Insurance Proceeds Are Property of the Estate

Property of the bankruptcy estate includes:

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
. . . .
(C) as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(5)(C). Debtor acquired her interest in the insurance proceeds *after* the

180-day period expired. However, in a Chapter 13 case, property of the bankruptcy estate also includes:

> [I]n addition to the property specified in section 541 of this title—
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first[.]

*Id.* § 1306(a)(1).

There is a split of authority on the issue of whether life insurance proceeds acquired by a debtor more than 180 days after filing a Chapter 13 case are property of the estate. However, "[t]he overwhelming majority of courts to have addressed this issue 'agree that § 1306 modifies the § 541 time period in Chapter 13 cases.'" *Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir. 2013) (quoting *Vannordstrand v. Hamilton (In re Vannordstrand)*, 356 B.R. 788, (B.A.P. 10th Cir. 2007) (collecting cases)); *accord Dale v. Maney (In re Dale)*, 505 B.R. 8, 13 (B.A.P. 9th Cir. 2014). *But see In re McAllister*, 510 B.R. 409, 420 (Bankr. N.D. Ga. 2014) (holding that "the specific date restriction set forth in § 541(a)(5) controls and that § 1306(a)(1) does not eliminate that restriction"); *In re Key*, 465 B.R. 709, 712 (Bankr. S.D. Ga. 2012) (Barrett, J.) (same); *Huan Le v. Walsh (In re Walsh)*, No. 07-60774, 2011 WL 2621018, at *2 (Bankr. S.D. Ga. June 15, 2011) (Dalis, J.) (same).

Both sides of the split argue that the statutes' plain language supports their

interpretation. To that end, the majority view contends that the principle of statutory interpretation that courts must give effect to every word of a statute supports its position because "if Section 541's 180-day rule restricts what is included in a Chapter 13 estate, then Section 1306(a), which expands the temporal restriction for Chapter 13 purposes, loses all meaning. By contrast, neither statute is rendered superfluous, and both are given effect, if Section 1306(a)'s extended timing applies to Chapter 13 estates and supplements Section 541 with property acquired before the Chapter 13 case is closed, dismissed, or converted." *Carroll*, 735 F.3d at 152. On the other hand, the minority view argues that the broad interpretation of § 1306(a)(1) taken by the majority position renders § 1306(a)(2) superfluous. *In re Key*, 465 B.R. at 712. As another example, the majority view argues that the principle of statutory interpretation that the specific governs the general supports its interpretation because "Section 1306(a) is specific to Chapter 13 bankruptcies and defines estates solely for purposes of that reorganization chapter. Section 541, by contrast, is a general provision that provides generic contours for bankruptcy estates." *Carroll*, 735 F.3d at 152. In contrast, the minority view argues that "the more specific date restriction that helps define the kind of property included in the estate pursuant to § 541(a)(5) controls and is not superseded by conflicting temporal elements of § 1306(a)(1)." *Walsh*, 2011 WL 2621018, at *2.

After careful consideration, the Court agrees with the Fourth Circuit Court

of Appeals' analysis and conclusions in *Carroll v. Logan*.[5]  The plain language of

§ 1306(a) expands the 180-day time period in § 541(a)(5) to the time that the case is

"closed, dismissed, or converted."  As a result, the insurance proceeds received by Debtor

fall within the expanded definition of property of the estate in this Chapter 13 case.[6]


B.    The Extent to Which the Remaining Insurance Proceeds Are Exempt Under
      O.C.G.A. § 44-13-100(a)(11)(C)

         The Bankruptcy Code permits a debtor to exempt certain assets from the

bankruptcy estate to further the Code's fresh start policy.  *Boudreaux v. Sheffield (In re*

*Sheffield)*, 507 B.R. 400, 406 (Bankr. S.D. Ga. 2014) (Coleman, J.); *Wallace v.*

*McFarland (In re McFarland )*, 500 B.R. 279, 283 (Bankr. S.D. Ga. 2013) (Barrett, J.).

Georgia "opted out" of the federal exemptions provided for in 11 U.S.C. § 522(d).

Therefore, Georgia debtors are only permitted to exempt property under state law or

federal law other than § 522(d).  Georgia's bankruptcy specific exemptions are set forth in

---

[5] Although the Eleventh Circuit Court of Appeals has not squarely addressed this issue, in *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008), the court advocated a broad reading of § 1306(a) and cited a case favorably that held that an inheritance received by the debtor in a Chapter 13 case postconfirmation and after the 180-day period expired was property of the bankruptcy estate.  *Id.* at 1243 (citing *In re Nott*, 269 B.R. 250, 257–58 (Bankr. M.D. Fla. 2000)).

[6] At the July 1, 2014 hearing, Debtor raised the argument that "horizontal stare decisis" should apply and, as a result, the Court should follow the minority view because this case was previously assigned to Judge Dalis, who followed the minority view in *Walsh*, 2011 WL 2621018.  The Court rejects Debtor's argument and must follow the majority view in light of its conclusion that the statutes' plain language dictates that life insurance proceeds obtained more than 180 days after the petition date (but before the case is "closed, dismissed, or converted") are property of the estate.

O.C.G.A. § 44-13-100. In Debtor's amended Schedule C, she claims an exemption in the insurance proceeds in the amount of $90,000.00 pursuant to O.C.G.A. § 44-13-100(a)(11)(C) (dckt. 148, at 4), which provides an exemption for:

> (11) The debtor's right to receive, or property that is traceable to:
>
> . . . .
>
>> (C) A payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, *to the extent reasonably necessary for the support of the debtor* and any dependent of the debtor[.]

O.C.G.A. § 44-13-100(a)(11)(C) (emphasis added). Trustee, as the objecting party, bears the burden to prove by a preponderance of the evidence that Debtor's claim of exemption in the life insurance proceeds is improper. Fed. R. Bankr. P. 4003(c); *In re Mooney*, 503 B.R. 916, 917 (Bankr. M.D. Ga. 2014); *Silliman v. Cassell*, 738 S.E.2d 606, 612 (Ga.), *adopted by Silliman v. Cassell (In re Cassell)*, 713 F.3d 81 (11th Cir. 2013). Trustee stipulated that Debtor was a dependant of the insured, Mr. Taylor, for purposes of O.C.G.A. § 44-13-100(a)(11)(C) (dckt. 171, at 4.), and Debtor stipulated that she has no dependants. (Dckt. 171, at 5.) Therefore, the remaining inquiry is to what extent the insurance proceeds are reasonably necessary for the support of Debtor.

To determine whether the life insurance proceeds, or a portion thereof, are reasonably necessary for the support of Debtor, "the Court must consider whether [Debtor] has sufficient income, aside from these funds, to 'provide for the basic needs of the debtor and any dependents.'" *In re Bright*, No. 05-14093-WHD, 2007 WL 7141820, at *3 (Bankr. N.D. Ga. July 16, 2007) (quoting *In re Williams*, 197 B.R. 398 (Bankr. M.D.

Ga. 1996)); *see also Baker v. Penton (In re Penton)*, No. 12-12167-WHD, 2013 WL 1208748, at *4 (Bankr. N.D. Ga. Feb. 15, 2013).

Because other provisions in the Georgia statute limit the exemptible amount "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor," cases interpreting those other provisions are persuasive authority. In *Baker v. Penton (In re Penton)*, Judge Drake found that the exempted pension payments were reasonably necessary for the support of the debtors and their dependents because the debtors' schedules showed that the pension payments were relied on to pay their reasonable and necessary living expenses. *Baker v. Penton (In re Penton)*, 2013 WL 1208748, at *4. In *In re Bright*, Judge Drake found that $50,000.00 of life insurance proceeds spent to keep the debtor's business from failing was reasonably necessary for the debtor's support because saving the business ensured that she would continue to have a source of income for her basic support. *In re Bright*, 2007 WL 7141820, at *3. Judge Drake also found that the debtor could exempt another $10,000.00 based on the debtor's use of the death benefits to pay household bills and health insurance premiums. *Id.* In *In re Howard*, Judge Davis found that the settlement funds[7] claimed to be exempt were not reasonably necessary for the support of the debtor or a dependant of the debtor because current family income exceeded current family expenses by about $500.00 per month, the debtor's prospects showed that his income was likely to increase, and there was no

---

[7] The debtor in *In re Howard* argued that these funds were for loss of future earnings and entitled to an exemption under O.C.G.A. § 44-13-100(a)(11)(E).

evidence that the debtor or a dependent of the debtor were dependant on the funds. *In re Howard*, 169 B.R. 77 (Bankr. S.D. Ga. 1994) (Davis, J.).

In total, Debtor was the named beneficiary of $105,845.61 of life insurance proceeds. She did not amend her schedules to disclose this postpetition asset within a reasonable time, and when she finally did choose to disclose, she did not disclose the full amount that she received. By the time her entitlement to retain these proceeds had been challenged by Trustee, she only had about $98,500 left. (Dckt. 168.) She has claimed an exemption of only $90,000.00. Accordingly, the $8,500.00 difference is nonexempt.

As to the remaining $90,000.00, the Court must examine the evidence in the record that might support a finding that Debtor is entitled to exempt all or part of these proceeds pursuant to O.C.G.A. § 44-13-100(a)(11)(C). The burden is on Trustee as the objecting party. Fed. R. Bankr. P. 4003(c). Neither party presented much useful evidence at the hearing beyond what could have been gleaned from the schedules. Debtor seemed confused and gave contradictory statements.

To begin with, Debtor owes postpetition income taxes that the Court finds are largely the result of her receipt of Mr. Taylor's commission income. These taxes should have been paid, at least in part, as estimated taxes as those funds were received. In any event, they represent a reasonable and necessary living expense that must be paid.

Accordingly, the Court finds that $27,939.00 of the remaining $90,000.00 is exempt because it must be paid to the taxing authority for state and federal taxes for 2012 and 2013.[8]

Secondly, because Debtor's residence is encumbered by a second mortgage of approximately $4,370.22, with payments of about $400.00 per month, a prudent application of part of the funds (and one that will assist the Court in analyzing her budget) would be to pay off that second mortgage. Accordingly, the Court finds that an additional $4,370.22 is exempt as reasonably necessary for Debtor's support. *See In re Bright*, 2007 WL 7141820, at *3.

After subtracting these two amounts from $90,000.00, there remains only *$57,690.78* claimed as exempt that the Court must address.

Debtor's schedules as amended are confusing, contradictory, and simply wrong. Trustee bears the burden of proof, but it is for the Court to decide what the evidence demonstrates.

---

[8] For purposes of determining the proper amount of the exemption, it is immaterial to the Court whether Debtor has already paid her tax obligations out of the life insurance proceeds because, if she has not, she will be required to do so in the near future or face mounting adverse consequences. On the other hand, if Trustee was able to prove that she had already paid these tax obligations without using the life insurance proceeds, that would have tended to show that she is not relying on the insurance proceeds for her support. However, that evidence is not before the Court.

The Court will now attempt to discern Debtor's financial situation using her monthly budget from her Schedules I and J as supplemented by the evidence presented at the hearing. Debtor's amended Schedule I reflects two sources of monthly income: commissions of $3,700.00 and Social Security of $746.00, for a total of $4,446.00. Both income figures are incorrect. As Debtor's tax returns and bank statements reflect, her commission income has never been as low as $3,700.00 per month. Her Social Security income (survivors benefits) is $2,208.00. Accordingly, her combined income is closer to $5,908.00 per month.

Debtor's amended Schedule J shows total monthly expenses of $4,249, but that sum is also inaccurate in at least two respects. First, the mortgage payment of $2,424.00 does *not* include property taxes or insurance, but those expense items do not otherwise appear in the budget. Secondly, Debtor appears to have understated her income tax liabilities by $446.83 per month. Her 2013 federal tax return reflects taxes owed of $8,962.00, or $746.83 per month, not the $300.00 listed in her Schedule J. (Joint Ex. 7.) That same tax return reflects real estate taxes of approximately $2,005.00 (illegible from the exhibit) and personal property taxes of $135.00, for total annual taxes of $2,140.00, or $178.33 per month.

These two adjustments reflect that her current expenses (excluding the

second mortgage payment that can be paid in a lump sum) is $4,474.16.[9]  With current income of $5,900.00 per month, it would appear at first glance that the remaining life insurance proceeds are *not* necessary for Debtors' support.  However, the Court must somehow account for the undeniable fact that the commission income will decline over time.

Based on Debtor's monthly budget, if she did not receive commission income, her only income would be Social Security survivors benefits of $2,208.00.  Excluding payments for her second mortgage (which is accounted for above), income taxes, and her relatively few remaining Chapter 13 plan payments, her monthly expenses are $3,686.44. Therefore, Debtor has a current monthly shortfall of $1,478.44 without accounting for her commission income.

The two variable aspects of Debtor's budget are the commission income and taxes. Tax expenses will decrease as a result of decreasing commission income, although admittedly not at a consistent rate because it was represented that Debtor's Social Security benefits are also taxable and different marginal tax rates may apply at different income levels. Total yearly commission income declined from $63,148.00 in

---

[9] $4,249.00 (average monthly expenses from amended Schedule J) less $400.00 for her second mortgage, plus understated income taxes of $446.83 and property taxes of $178.33 equals $4,474.16.

2012 to $51,925.00 in 2013, which is about a twenty-percent decline.[10] The table below estimates monthly commission income for the next ten years assuming a twenty-percent yearly decline.[11] The Court finds that it is appropriate to make these projections because, unlike the situation in *In re Howard* where the debtor's income would likely increase in the near future, Debtor's income will likely decline until her death.

In 2012, commission income was $63,148.00 and state and federal taxes were $18,977.00. Therefore, Debtor's income taxes were about thirty percent of her income. As reflected in the table below, I find that it is appropriate to reduce the amount of commission income by this thirty-percent figure to more accurately determine how much income will be available to cover Debtor's monthly shortfall of $1,478.44.

---

[10] The actual figure is closer to 17.7725%.

[11] Georgia Code § 24-14-44 provides: "In all civil proceedings where the life expectancy of a person shall be an issue, the American Experience Mortality Tables shall be admissible as evidence of the life expectancy of such person." The "Expectation of Life" for a sixty-eight-year-old person, such as Debtor, is 9.47 years. Counsel for Debtor opined that the Social Security Administration calculated that Debtor had a nineteen-year projected life span; however, he tendered no evidence to that effect. Without necessarily relying on the American Experience Mortality Tables, the Court finds that a ten-year projection period is appropriate based on the evidence presented (or rather lack thereof in this case).

Table 1: Projected Commission Income

| Year | Average Monthly Commission Income | After 30% Deduction for Income Taxes | Monthly Surplus/ (Shortfall) | Yearly Surplus/ (Shortfall) |
|------|-----------------------------------|--------------------------------------|------------------------------|-----------------------------|
| 2014 | $3,461.67 | $2,423.17 | $944.73 | $11,336.75 |
| 2015 | $2,769.34 | $1,938.54 | $460.10 | $5,521.18 |
| 2016 | $2,215.47 | $1,550.83 | $72.39 | $868.67 |
| 2017 | $1,772.38 | $1,240.67 | ($237.77) | ($2,853.29) |
| 2018 | $1,417.90 | $992.53 | ($485.91) | ($5,830.92) |
| 2019 | $1,134.32 | $794.02 | ($684.42) | ($8,212.99) |
| 2020 | $907.46 | $635.22 | ($843.22) | ($10,118.62) |
| 2021 | $725.97 | $508.18 | ($970.26) | ($11,643.13) |
| 2022 | $580.77 | $406.54 | ($1,071.90) | ($12,862.81) |
| 2023 | $464.62 | $325.23 | ($1,153.21) | ($13,838.47) |

Although Debtor is currently experiencing cash surpluses, over time this situation will likely change. As shown in the table above, starting around 2017, commission income will probably fall to a level that will be insufficient to cover Debtor's expenses. Based on the calculations from the chart above, adding the three years of surplus to the seven years of shortfall results in a cumulative shortfall of $47,633.64. Therefore, the Court finds that an additional $47,633.64 will be reasonably necessary for the support of Debtor.[12] Consequently, $47,633.64 of the $57,690.78 that remained is nonexempt.

---

[12] This figure was calculated without accounting for the time value of money because Trustee, who bears the burden in this case, did not present evidence of an appropriate rate.

AO 72A
(Rev. 8/82)

C.    Conclusion

The remaining $98,500.00 of life insurance proceeds are property of Debtor's bankruptcy estate.  Based on the analysis above, Debtor is entitled to exempt $79,942.86 of those proceeds pursuant to O.C.G.A. § 44-13-100(a)(11)(C).  The remaining proceeds, which total $18,557.14, are property of the estate that is available to be used to repay Debtor's creditors.

Debtor's motion to retain insurance proceeds (dckt. 152) will be denied as moot.  Because Debtor's claim of exemptions (amended Schedule C) sought the same relief and Debtor's arguments that its exemption is properly claimed were heard in the context of Trustee's objection to Debtor's claim of exemptions, separate consideration of the motion to retain is unnecessary.

## O R D E R

Based on the foregoing, it is ORDERED that Debtor's Motion to Retain Life Insurance Proceeds—Amended (dckt. 152) is DENIED as moot. Trustee's Objection to Claim of Exemptions (dckt. 155) is SUSTAINED in part and OVERRULED in part. Debtor is entitled to an exemption in the life insurance proceeds in the amount of $79,942.86. The remaining $18,557.14 is property of the estate and available to satisfy the claims of unsecured creditors.

Dated at Savannah, Georgia, this 18th day of December, 2014.

Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia

SAO 72A
(Rev. 8/82)